UNITED STATES v. HILL.

(District Court, D. Colorado. September 28, 1914.)

No. 5339.

1. PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENT—BURDEN OF PROOF.

In a suit for the cancellation of a patent to land, where it is shown that the entry was fraudulent, defendant has the burden of proof to establish the defense that he was a bona fide purchaser for value without notice.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332-335; Dec. Dig. § 120.*]

2. EVIDENCE (§ 383*)—DOCUMENTARY EVIDENCE—CONCLUSIVENESS.

The consideration paid for land by a defendant claiming to be a bona fide purchaser must be alleged and proved independently of the recital in the deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660-1677; Dec. Dig. § 383.*]

3. PRINCIPAL AND AGENT (§ 177*)—NOTICE TO AGENT.

Notice to an agent for the purchase of land of facts affecting the title is binding on his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670-679; Dec. Dig. § 177.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. VENDOR AND PURCHASER (§ 244*)—BONA FIDE PURCHASER—EVIDENCE.**

Evidence that a grantee of land sent money to his brother as his agent with which to purchase the land and that the purchaser had no knowledge of facts affecting the title, *held* insufficient to show either that the consideration was paid, or want of notice to sustain the claim that he was a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

In Equity. Suit by the United States against Charles B. Hill. Decree for complainant.

Frank Hall, Sp. Asst. Atty. Gen., of Washington, D. C., for the United States.

J. Foster Symes, of Denver, Colo., for defendant.

LEWIS, District Judge. This is a suit brought to obtain a decree cancelling patent to 320 acres of coal land on the ground that the same was obtained by fraudulent practices of the entrymen. The answer denies the fraud and sets up the defense of a bona fide purchaser for value. There is some criticism made on both sides, in the briefs submitted after final hearing, of the pleadings,—the defendant claiming that the proof does not make out the case stated in the bill, and the complainants that the answer does not contain all of the elements necessary to constitute a defense under the claim of a bona fide purchaser. The complaint does charge a conspiracy, on the part of the defendant and the entrymen, to unlawfully obtain the lands, but it also directly charges the entrymen with fraudulent conduct in making the entry; and while the proof does not appear to be sufficient to support the conclusion that the defendant personally participated in the alleged conspiracy, it amply sustains the fraudulent character of the entry. We pass the criticisms with the assumption that the pleadings on both sides are sufficient and look to the facts.

The proof on both sides is short, the complainants offering only one witness, together with the entry papers and patent, and the defendant himself being the only witness in his behalf. The entry was made by Lewis M. Allen and Chas. D. Richards. The coal declaratory statement of the entrymen bears date December 24, 1902, and the other papers required by the rules and regulations of the land office bear dates thence on as late as April 4, 1903. They all appear to have been signed by the entrymen before James W. Barbee a notary public at Denver, Colorado. The receiver's coal receipt for the government purchase price, to-wit, $3,200, is dated at Glenwood Springs, Colorado, April 2, 1903, and recites that that amount of money was received from Allen and Richards for the land entered. The register's final coal certificate of entry bears the same date and was issued by the register in the names of the two entrymen. The patent which runs in the names of the entrymen bears date July 23, 1903. The deed from the entrymen to the defendant Hill, copy of which was offered in evidence by the defendant, bears date April 2, 1903, and was filed for record in the office of the recorder of Routt County, where the land is situate, December 21, 1907.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The only witness called on behalf of complainants was Lewis M. Allen, one of the entrymen. He testified that a man whom he knew, but whose name he could not recall, asked him on the street one day if he had ever exercised his right to enter coal land; that the next day he went to the office of James W. Barbee, in Denver, and signed papers which were represented as being necessary for him to make the entry; that he did not know his co-entryman Richards; that he was at Barbee's office only on the one occasion; that he signed all the papers which he ever signed in connection with the matter on that one visit; that he was induced to do so on the consideration paid to him of $2.50, which he received, and that this was all he ever had to do with the matter in any respect; and that he never paid anything to the government for the land and never received any papers thereafter in reference to the land.

The defendant Hill testified in his own behalf, that he was a resident of Montgomery, New York; that he did not know the entrymen and had never met them; that his brother N. P. Hill resided at Florence, Colorado, and notified the defendant at about the time the deed bears date that he was able to purchase for him the tract in question, and he directed his brother to purchase it; that he paid $3,400 for the land; that his brother at that time was holding some of his funds which were used on the purchase, but that he sent him a check for the greater part of it, and sometime thereafter received the deed signed by the entrymen, copy of which was offered in evidence.

The defendant had previously exercised his right under the statute in entering coal lands. He testified that he did not know whether the entrymen, Allen and Richards, received any of the money which his brother was directed to pay.

The entry being clearly fraudulent, the only question for consideration is whether or not the equity of the complainants is superior or inferior to the rights of the defendant.

[1] 1. Under the allegations of the bill and the proof adduced, the burden rested on the defendant to allege in his answer and establish by evidence facts showing that he was a bona fide purchaser for value without notice.

In Boone v. Chiles, 10 Pet. 177, it is said at page 211 (9 L. Ed. 388):

"The answer setting it up is no evidence against the plaintiff who is not bound to contradict or rebut it (citing cases). It must be established affirmatively, by the defendant, independently of his oath (to the answer), (citing cases)."

In Nickerson v. Meacham (C. C.) 14 Fed. 881, 883, it is said:

"A party relying on the defense that he is a bona fide purchaser, entitled to hold notwithstanding a prior equity, must establish his defense by proof. It is an affirmative defense."

In Smith v. Orton, 131 U. S. lxxv, 18 L. Ed. 62, it is said:

"To bring the defense within it (the rule which affords protection to a bona fide purchaser), it must be averred in the plea or answer and proved, that the conveyance was by deed, and that the vendor was seized of the legal title; that all the purchase money was paid and paid before notice."

See, also, Sillyman v. King, 36 Iowa, 207; Lewis v. Lindley, 19 Mont. 443, 48 Pac. 765; Raymond v. Flavel, 27 Or. 248, 40 Pac. 158; Prickett v. Muck, 74 Wis. 207, 42 N. W. 256.

I think the rule is correctly stated in Fulton v. Woodman, 54 Miss. 158, 172, thus:

"Upon whom rests the burden of proof? The complainant contends that the claim of being a bona fide purchaser is an affirmative defense, and that, therefore, the burden of proving it is upon him who pleads it. This is only true where fraud in some previous holder of the title has been shown. In such a case, the defendant who sets up the claim of a bona fide purchaser in himself, as freeing him from the effects of the fraud, must prove this affirmative claim. But it surely requires no argument to show that, in order for this principle to come in play, the previous fraud by which the title has been vitiated must be established, and that this cannot be accomplished by charges without proof."

It having been already assumed that the defense is sufficiently pleaded in the answer, we turn to the evidence to see whether the defendant, on whom the burden rests, has established the defense so set up; and thus overcome complainants' equity. This he could do by establishing a superior equity in himself. U. S. v. Detroit Co., 131 Fed. 668, 67 C. C. A. 1; s. c., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499.

[2] From the testimony offered in behalf of the defendant it appears that he knew nothing about the transaction, further than that he furnished his brother with funds with which to buy the land, and he later received the entrymen's deed. His brother was not called as a witness. It is reasonably inferable that his brother could have disclosed fully what the transaction was. He was undoubtedly the defendant's agent in the alleged purchase. No one else acted in that behalf for the defendant. It is clear from the proof that none of the money furnished by the defendant was paid to the entryman Allen, and there is no evidence that the other entryman, Richards, received any of it. The deed to him was executed by them. They were the vendors to whom the money would be paid, or paid at their direction. If the brother of the defendant did not pay the money to them,— and it is apparent that the entryman Allen got none of it,—then the only person who could tell us to whom it was paid is the defendant's brother. Counsel agreed at the hearing that the brother was still among the living, but he was not produced as a witness. If we are to indulge in presumptions, the most natural one would be that the brother knew all about the character of the entry made by Allen and Richards and paid $3,200, the required purchase price, out of the money sent him by the defendant to the receiver of the land office when the entry was accepted. The brother was the defendant's agent, and whatever he knew or did for the defendant in the matter is attributable to the defendant. But we put presumptions aside. Allen testified that all he ever got was $2.50 for making the filing papers, and there is no proof that Richards ever got anything. Certainly the defense is not made good by simply showing that the vendee paid without disclosing to whom he paid. It will not do simply to say that he paid it to his agent. So far as we know from the proof, his agent may still have the money. There is no evidence that the defendant has paid anything for the land.

In Boone v. Chiles, 10 Pet. 177, supra, it is said at page 211 (9 L. Ed. 388):

"The consideration must be stated, with a distinct averment that it was bona fide and truly paid, independently of the recital in the deed. Notice must be denied, previous to, and down to, the time of paying the money, and the delivery of the deed."

In Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063, it is said:

"None of the original deeds in appellant's chain appear to have been produced on the hearing, though certified copies were attached to the pleadings, but no independent evidence was adduced of the payment by any of the defendants of any money whatever. As against complainant the recitals in these deeds cannot be relied on as proof of the payment of the purchase money."

[3] 2. This condition of affairs, as conclusively shown by the proof, may logically lead to the further conclusion that the defendant is chargeable with notice. For in the last case cited it is further said:

"Apart from this we hold appellant chargeable with notice. The rule is thus stated by the Virginia Court of Appeals, in Burwell v. Fauber, 21 Grat. [62 Va.] 446, 463: 'Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. Caveat emptor is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a bona fide purchaser. He is bound not only by actual, but also by constructive notice, which is the same in its effect as actual notice. * * * He has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice.'"

In saying this I mean to hold the defendant to whatever his agent learned and did in the transaction while acting for him. It is hardly believable that the defendant's brother and agent did not know the whole story. Notice to an agent is binding upon his principal. Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167; McIntire v. Pryor, 173 U. S. 38, 52, 19 Sup. Ct. 352, 43 L. Ed. 606; Mechem on Agency, §§ 717, 724; Warner v. Warren, 46 N. Y. 228; Hough v. Richardson, 3 Story, 659, Fed. Cas. No. 6,722, bot. 2d col. p. 577.

[4] Defendant's defense has not been made out by the proof. The best that can be said for defendant on the facts is, that he has left two indispensable elements of his defense, i. e. payment of the consideration and lack of notice of the entrymen's fraud on complainants, in grave doubt,—indeed, it should rather be said, there is no proof of payment.

For these reasons decree must go for complainants as prayed.

It is so ordered.